FILED
United States Court of Appeals
Tenth Circuit

December 14, 2023

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

HUGO ABISAI MONSALVO
VELAZQUEZ,

     Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,

     Respondent.

No. 22-9576
(Petition for Review)

_____

**ORDER**
_____

Before **BACHARACH**, **KELLY**, and **CARSON**, Circuit Judges.
_____

This matter is before the court on *Petitioner's Petition for Panel Rehearing or Rehearing En Banc* and *Respondent's Opposition to Petitioner's Petition for Panel Rehearing or Rehearing En Banc.* Upon careful consideration of the petition and the response, we direct as follows.

Pursuant to Fed. R. App. P. 40, Petitioner's request for panel rehearing is GRANTED IN PART to the extent of the modifications in the attached revised opinion. The court's September 8, 2023 opinion is withdrawn and replaced by the attached revised opinion, which shall be filed as of today's date. Because the panel's decision to partially grant panel rehearing resulted in only non-substantive changes to the opinion that do not

affect the outcome of this appeal, Petitioner may not file a second or successive rehearing petition. *See* 10th Cir. R. 40.3.

The petition, response, and the attached revised opinion were transmitted to all judges of the court who are in regular active service. As no member of the panel and no judge in regular active service requested that the court be polled, Petitioner's request for rehearing en banc is DENIED. *See* Fed. R. App. P. 35(f).

Entered for the Court,

CHRISTOPHER M. WOLPERT, Clerk

FILED
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 14, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

_____

HUGO ABISAI MONSALVO
VELÁZQUEZ,

      Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,

      Respondent.

No. 22-9576

_____

**Petition for Review from an Order of**
**the Board of Immigration Appeals**
_____

Henry Douglast Hollithron of Hollithron Advocates, P.C., Denver, Colorado, for
Petitioner.

Corey L. Farrell, (Brian Boynton, Acting Assistant Attorney General, Civil Division,
Sabatino F. Leo, Assistant Director, and Greg D. Mack, Office of Immigration Litigation,
U.S. Department of Justice, on the brief), Washington, D.C., for Respondent.

_____

Before **BACHARACH**, **KELLY**, and **CARSON**, Circuit Judges.

_____

**KELLY**, Circuit Judge.

_____

Petitioner Hugo Abisaí Monsalvo Velázquez seeks review of the Board of

Immigration Appeals' (BIA) denial of his motion for reconsideration of the BIA's

dismissal of his motion to reopen proceedings. Accessing our jurisdiction under 8

U.S.C. § 1252(b)(1), we deny review because Mr. Velázquez failed to voluntarily depart or file an administrative motion within 60 calendar days, the maximum period provided by statute.  8 U.S.C. § 1229c(b)(2).

## Background

Mr. Velázquez — a 32-year-old citizen and native of Mexico — entered the United States without authorization in 2005.  In 2011, the Department of Homeland Security (DHS) sought to remove Mr. Velázquez for unlawful entry and served him a Notice to Appear (NTA) in immigration court.  AR 713–14.  The NTA did not designate the time or place to appear and was, therefore, deficient according to the Supreme Court's since-issued ruling in Pereira v. Sessions, 138 S. Ct. 2105, 2113–14 (2018).  AR 479.  In 2013, Mr. Velázquez admitted to each of the allegations in the NTA and conceded the sole charge of removability: that he had unlawfully entered the United States in 2005.  Id. 435.

Mr. Velázquez then sought withholding of removal, protection under the Convention Against Torture (CAT), and, in the alternative, voluntary departure, 8 U.S.C. § 1229c.  AR 435.  At a March 5, 2019, hearing, an Immigration Judge (IJ) deemed Mr. Velázquez ineligible for "withholding of removal, either under the Immigration and Nationality Act or under the torture convention."  Id. 521.  The IJ opted to grant voluntary departure "for 60 days . . . and that will be until May 6 of 2019."  Id. 523.  The written order, issued that same day, informed Mr. Velázquez he would "be granted voluntary departure under Section 240B(b) of the Act in lieu of removal without expense to the government on or before 60 calendar days from the

2

date of service of th[e] order." Id. 439–40.  The order also advised that if Mr.

Velázquez "fail[ed] to voluntarily depart the United States within the time frame

specified or within any extensions granted by DHS," he would face a civil penalty of

$3,000 and "be[come] ineligible for a period of 10 years to receive cancellation of

removal, adjustment of status, registry, voluntary departure, or a change in

nonimmigrant status." Id. 440.  The order also advised Mr. Velázquez that were he

to judicially challenge the order, the grant of voluntary departure would

automatically terminate, and Mr. Velázquez would be removed to Mexico. Id. 440–

41.

      Mr. Velázquez retained counsel and appealed from the denial of his

application for relief to the BIA on April 4, 2019. Id. 405–08.  On October 12, 2021,

the BIA dismissed Mr. Velázquez's appeal, affirming the IJ's decision in full and

reinstating the 60-day voluntary departure period. Id. 386–89.  The order advised

that if Mr. Velázquez were to file a motion to reopen or reconsider, the voluntary

departure would terminate and an alternate removal order would come into effect.

Additionally, if Mr. Velázquez sought to petition for judicial review, the allotted

period for voluntary departure would automatically terminate. Id. 388.  However, if

Mr. Velázquez left within 30 days of filing such a petition, he would not be subject to

the penalties for failing to voluntarily depart.

      On December 13, 2021, Mr. Velázquez filed a motion to reopen his

proceedings to apply for cancellation of removal, 8 U.S.C. § 1229b(b).  Pet. Br. at 2;

AR 23–26.  Mr. Velázquez relied upon Niz-Chavez v. Garland, 141 S. Ct. 1474

(2021), and the fact that in 2011 he had been served a deficient NTA, to argue he had accrued 10 years of continuous presence in the United States, a prerequisite to eligibility for cancellation. AR 24–25.[1]

The BIA denied the motion to reopen based on its finding that Mr. Velázquez had not asserted "new facts" previously unavailable, 8 C.F.R. § 1003.2(c)(1), given Mr. Velázquez's claim for cancellation became viable before his 2019 removal hearing and before his appeal from the BIA's October 12, 2021 decision.[2] The BIA also found the motion untimely because Mr. Velázquez filed after the 60-day period allotted by the BIA, the maximum permitted by statute.[3] AR 20. The effect: Mr. Velázquez was no longer statutorily eligible for cancellation of removal.[4]

---

[1] To be eligible for cancellation of removal, a nonpermanent resident must show continuous residence or physical presence in the United States for 10 years. 8 U.S.C. § 1229b(b)(1)(A). Generally, once an alien receives an NTA, time may no longer be accrued for this purpose. Id. § 1229b(d)(1). In Pereira, the court found that an NTA lacking a time and place of removal proceedings (as Mr. Velázquez's was) could not stop the accrual of time for the purpose of § 1229b(d)(1). 138 S. Ct. at 2114. Niz-Chavez clarified that the "stop-time rule" could also not be triggered by a later-issued written notice supplying information omitted from the NTA. 141 S. Ct. at 1485.

[2] The Court decided Pereira in June 2018, before Mr. Velázquez's March 2019 removal hearing. Niz-Chavez was decided on April 29, 2021, while Mr. Velázquez's appeal, filed on April 4, 2019, was pending. AR 404. Thus, the BIA found that based on these developments, Mr. Velázquez had a viable claim for cancellation eligibility which could have been asserted at the March 2019 hearing or while his appeal was pending in 2021. AR 19–20.

[3] The 60th calendar day fell on Saturday, December 11, 2021. Mr. Velázquez filed his motion on Monday, December 13, 2021.

[4] See 8 U.S.C. § 1229c(d)(1)(B) ("Civil penalty for failure to depart") ("[I]f an alien is permitted to depart voluntarily . . . and voluntarily fails to depart the United States within the time period specified, the alien . . . shall be ineligible, for a period of 10 years, to receive any further relief under . . . section[] 1229b [cancellation of removal].").

Mr. Velázquez filed a timely motion to reconsider, challenging only the second component of the BIA's decision — that his motion to reopen was filed outside the 60-day voluntary departure period. Id. 7–9. In his view, the BIA's determination was at odds with the Executive Office of Immigration Review's (EOIR) policy concerning filing deadlines coinciding with a weekend or holiday. Id. 8. The BIA denied the motion, finding no statutory or regulatory authority to support Mr. Velázquez's desired "exten[sion] [of] the last day of the voluntary departure period falling on a weekend or a legal holiday to the next business day." Id. 3. It explained that the EOIR policy provisions cited by Mr. Velázquez did not speak to the issue before it as the policies governed filing deadlines, not the voluntary departure period. Id. 4. Mr. Velázquez filed a petition for review in this court.

## Discussion

Mr. Velázquez's petition presents the question of how time is computed when 60 days' voluntary departure is granted to a noncitizen pursuant to section 240B of the Immigration and Nationality Act (INA), 8 U.S.C. § 1229c(a)(1). Specifically, when the 60th calendar day falls on a weekend or federal holiday, does that day count in the accrual of voluntary departure time if the grantee files a motion to reopen his proceedings on the first available business day? This is an issue of first impression in this court and addressed before by only one other circuit of which we are aware. See Meza-Vallejos v. Holder, 669 F.3d 920, 926–27 (9th Cir. 2012). In light of clear legislative direction, we uphold the BIA's interpretation that regardless of what day of the week a voluntary departure period expires, an alien moving to reopen or

reconsider his removal proceedings must file within 60 calendar days from the date the relief is granted.

The BIA has not issued a precedential disposition on this point. Thus, we defer to the BIA's determination to the extent we find it persuasive. See Carpio v. Holder, 592 F.3d 1091, 1097–98 (10th Cir. 2010) (applying the framework set forth in Skidmore v. Swift & Co., 323 U.S. 134 (1944), to unpublished, single-member decision by the BIA).

## I. Jurisdiction

The government contends we lack jurisdiction to decide the issue presented by Mr. Velázquez's petition. It argues the BIA's denial of reconsideration derives from the underlying voluntary departure determination, and because we have no authority to review the agency's discretionary grant of this form of relief under 8 U.S.C. § 1252(a)(2)(B), Patel v. Garland, 142 S. Ct. 1614 (2022),[5] we are unable to consider "any judgment regarding voluntary departure." Resp. Br. at 36–38.

We cannot agree. This theory misconstrues the issue and overstates the implications of Patel. Section 1252(a)(2)(B)(i) bars judicial review of "any judgment regarding the granting of" certain categories of relief. Patel, 142 S. Ct. at 1618, 1622. Voluntary departure is one such category. See 8 U.S.C. § 1252(a)(2)(B)(i) (precluding review of judgments made under 8 U.S.C. § 1229c). In Patel, the Supreme Court clarified this jurisdictional bar extends to underlying factual

---

[5] See also 8 U.S.C. § 1229c(f) ("No court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure . . . .").

determinations.  142 S. Ct. at 1627.  Mr. Velázquez does not challenge the BIA's

award of voluntary departure, however.  Indeed, he himself <u>requested</u> this form of

relief.  AR 435.[6]  He seeks review of the denial of his motion to reconsider, a

disposition categorically within our purview.  <u>Mata v. Lynch</u>, 576 U.S. 143, 148

(2015); <u>see</u> 8 U.S.C. § 1252(b)(6) (providing for judicial review of a motion to

reopen or reconsider along with a final order of removal).

We are also unpersuaded by the government's suggestion that because we lack

jurisdiction over voluntary departure dispositions it follows that we may not review

any judgment precipitated by such a decision.  <u>See</u> Resp. Br. at 38.  For one, we

retain the authority to review legal questions, notwithstanding that the vehicle for

their presentment involves a discretionary determination.  <u>See</u> <u>Patel</u>, 142 S. Ct. at

1623; <u>id.</u> at 1635 (Gorsuch, J., dissenting) ("[E]veryone agrees that [8 U.S.C. §

1252(a)(2)(D)] restores judicial review of . . . discretionary judgments . . . to the

extent a legal question . . . is in play.").  More broadly, the fact that Mr. Velázquez,

at one stage in his proceedings, sought discretionary relief does not undermine our

ability to review the issues presented by a later judgment regarding his removal.

<u>Mata</u>, 576 U.S. at 148 ("That courts lack jurisdiction over one matter . . . does not

affect their jurisdiction over another . . . .").

---

[6] To the extent the government further suggests that § 1229c(f), which
deprives courts of "jurisdiction over an appeal from denial of a request for an order
of voluntary departure[,]" precludes our review, that section plainly does not apply
here given the IJ <u>granted</u> voluntary departure.

The government asserts that the motion to reopen was denied on two grounds, the first of which — that Mr. Velázquez failed to present previously unavailable evidence — is an "independent, dispositive, unchallenged, and undisputed" ground for denial. Resp. Br. at 31. Our ruling on the motion for reconsideration, in other words, would not alter the outcome of Mr. Velázquez's motion to reopen to apply for cancellation of removal — the underlying form of relief Mr. Velázquez sought. Id. at 34. We find otherwise. As in all cases, as a prerequisite to our review, this petition must present a justiciable conflict the resolution of which can result in "effectual relief" to the petitioner. City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000) (quoting Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992)); see Granados-Oseguera v. Mukasey, 546 F.3d 1011, 1014–1015 (9th Cir. 2008). Mr. Velázquez concedes he has waived a challenge to the first ground for the BIA's denial. See Pet. Br. at 7–8 & 8 n.3. He instead seeks our review of the BIA's conclusion that he untimely moved to reopen in violation of the conditions of his departure, and accordingly faces a monetary fine and ineligibility for future immigration relief. Thus, our disposition can conceivably result in effectual relief to Mr. Velázquez.

## II.    Merits

The INA authorizes the Attorney General to "permit an alien voluntarily to depart the United States at the alien's own expense . . . in lieu of" being forcibly removed. 8 U.S.C. § 1229c(a)(1). Following the conclusion of removal proceedings, the immigration judge may grant permission to depart not to exceed 60 days. Id.

§ 1229c(b)(2).  If an alien fails to depart within the time allotted, he or she must pay a civil fine and becomes ineligible for certain forms of relief, including adjustment of status, for ten years.  See 8 U.S.C. § 1229c(d)(1) ("Civil penalty for failure to depart").

Alternatively, prior to the expiration of the voluntary departure period, a noncitizen may file a motion to reopen or reconsider.[7]  A timely such motion avoids the penalties associated with failure to voluntarily depart but automatically terminates the grant of voluntary departure, causing an alternate removal order to come into effect.  If the noncitizen fails to voluntarily depart or move for affirmative relief within 60 days, in addition to becoming removable, the alien faces penalties triggered by noncompliance with the conditions of voluntary departure.  See 8 C.F.R. § 1240.26(b)(3)(iii); see also id. § 1240.26(e)(2) ("The filing of a motion to reopen or a motion to reconsider after the time allowed for voluntary departure has already expired does not in any way impact the period of time allowed for voluntary departure . . . .").

Mr. Velázquez contends that when a 60-day voluntary departure period expires on a weekend day (or legal holiday), a motion to reopen filed on the next available business day must be deemed to have been filed within the statutory period.  The

---

[7] Ordinarily, an alien has 90 days upon the entry of a final administrative order of removal to file a motion to reopen and 30 days within which to file a motion to reconsider.  8 C.F.R. § 1003.23(b).  As is underscored by the issue presented for review, when one agrees to voluntary departure, the time to file a motion to reopen effectively decreases.

government counters that adoption of Mr. Velázquez's rule necessarily involves
tolling of the statutory period, a result it argues was considered and rejected by the
Supreme Court in Dada v. Mukasey, 554 U.S. 1 (2008).  Resp. Br. at 8–12.  For his
part, Mr. Velázquez insists that this rule does not involve statutory "tolling," but
mere interpretation of "day" when the final "day" of the voluntary departure period
falls on a weekend or federal holiday.  Reply Br. at 16–19.

Mr. Velázquez's preferred interpretation, he argues, aligns with practice
policies published by the EOIR providing that "when a deadline falls on a weekend
or legal holiday, it is construed to fall on the immediately following business day."
Pet. Br. at 15 (citing Exec. Off. for Immigr. Rev., Immigr. Ct. Practice Manual
§ 3.1(c)(2)(D) (2022); Exec. Off. for Immigr. Rev., Bd. of Immigr. Appeals Practice
Manual, § 3.1(b)(2)(2022)).  Accordingly, he argues that the BIA's ruling is
inconsistent with EOIR policy concerning other deadlines and thus introduces
"illogic . . . into the computation of deadlines before immigration courts and the
BIA."  Pet. Br. at 15–16.

To the contrary, the BIA's ruling does not introduce inconsistency into the
immigration appeals process.  That "day" is applied in one manner when filing
appeals, motions, or other documents in immigration court or with the BIA and
another when interpreting a maximum time period designated by statute, makes
sense.  The same restrictions that apply in the filing context — court or agency
closures — do not prevent one from departing, by, for example, boarding a plane, or
otherwise being transported to one's chosen destination.  While a movant or

10

petitioner may be afforded until the next business day in the event a filing deadline falls on a weekend or holiday, that rule simply does not extend to this context. Although the BIA's interpretation may effectively require a movant to request reopening or reconsideration of his case before the expiration of the voluntary departure period, this would not be an unusual occurrence given a statutory deadline such as a limitations period.[8]

Conclusively, this case is governed by § 1229c, which unambiguously states that while the Attorney General has the discretion to grant voluntary departure, in no event may the time allotted exceed 60 days.[9]  8 U.S.C. § 1229c(b)(2); see also Dada, 554 U.S. at 15 ("To be sure, 8 U.S.C. § 1229c(b)(2) contains no ambiguity: The period within which the alien may depart voluntarily 'shall not be valid for a period exceeding 60 days.'").  The fact that one may file a motion to reopen does not obviate the conditions attached to voluntary departure: that the immigrant take action

---

[8] It would also not be uncommon, even in the filing context, for a litigant to need to prepare and dispatch documents well in advance of a deadline to account for possible postal delays.  See, e.g., Exec. Off. for Immigr. Rev., Bd. of Immigr. Appeals Practice Manual, § 3.1(a)(1) ("Receipt rule"); id. § 3.2(b) ("Because paper filings are date-stamped upon arrival at the Board, the Board strongly recommends that parties filing in paper should file as far in advance of the deadline as possible . . . .").  The BIA transitioned to electronic filing in 2022, but filing electronically is not available in cases initiated by paper, as Mr. Velázquez's was.  Electronic Case Access and Filing, Exec. Off. for Immigr. Rev., 86 Fed. Reg. 70708, 70710 (Dec. 12, 2021) (effective Feb. 11, 2022).

[9] Implementing regulations provide that though "[a]uthority to extend the time within which to depart voluntarily" lies with the "district director, the Deputy Executive Associate Commissioner for Detention and Removal, [and] the Director of the Office of Juvenile Affairs . . . .  In no event can the total period of time, including any extension, exceed . . . 60 days . . . ." 8 C.F.R. § 1240.26(f) (emphasis added).

11

in some form, either by leaving the United States or filing an administrative motion. The Court made as much clear in <u>Dada</u>. 554 U.S. at 19 (addressing the intersection of voluntary departure and filing a motion to reopen; noting the alien's "obligation to arrange for departure, and actually depart, within the 60-day period."). By requesting and agreeing to voluntary departure, Mr. Velázquez accepted that he would be obligated to depart within 60 days, as a result of which he would not have 90 days to file a motion for affirmative relief. <u>See</u> <u>supra</u> n.7. Rather, he would have 57, or 58 days, given that his motion would need to be received by the BIA by December 11.[10]

The BIA's determination is further supported by the policy rationale underpinning voluntary departure. As the Supreme Court described it, inherent in the voluntary departure agreement is a "quid pro quo." <u>Dada</u>, 54 U.S. at 11. The immigrant fulfills his interest in departing to his destination of choice and avoids the stigma and legal consequences associated with deportation and subsequent reentry following removal.[11] In exchange, the government benefits from an expedited

---

[10] In his reply brief, Mr. Velázquez draws our attention to the IJ's oral March 5, 2019 order, which indicated that he would have until May 6 to depart, without objection from the government. Reply Br. at 18–19; AR 523. He notes that 60 calendar days from March 5 was May 4, which fell on a Saturday. In his view, the fact that the IJ allowed him until Monday, May 6, indicates that the immigration court agrees with his interpretation. Given this argument was not presented to the BIA, or in Mr. Velázquez's opening brief, it is waived. <u>See</u> <u>United States v. Leffler</u>, 942 F.3d 1192, 1197 (10th Cir. 2019); <u>Torres de la Cruz v. Maurer</u>, 483 F.3d 1013, 1022–23 (10th Cir. 2007) (same waiver rules that generally apply to appellate practice apply to review of proceedings conducted by the BIA).

[11] Removed aliens face significant barriers to reentry and in certain circumstances, may receive up to 20 years' imprisonment for unlawfully reentering the United States. 8 U.S.C. § 1326(a)(1)–(2), (b)(2).

removal process and avoids the administrative expenses involved in removal and pre-removal detention.  By electing to remain in the country and pursue an administrative motion, Mr. Velázquez chose to forgo the benefits of voluntary departure.  <u>Dada</u>, 554 U.S. at 21 ("[T]he alien has the option either to abide by the terms, and receive the agreed-upon benefits, of voluntary departure; or, alternatively, to forgo those benefits and remain in the United States to pursue an administrative motion.").

The Ninth Circuit rejected the BIA's interpretation on analogous facts in <u>Meza-Vallejos</u>, finding the ruling's effect was to unfairly "shorten" the statutory departure window.  669 F.3d at 927.  Accordingly, it held

> where the last day of a period of voluntary departure falls on a day on which an immigrant cannot file a motion for affirmative relief with the BIA, that day does not count in the voluntary departure period if, as here, the immigrant files on the first available day a motion that would either have tolled, automatically withdrawn, or otherwise affected his request for voluntary departure . . . . [Petitioner's] motion to reopen was timely filed on Monday . . . .

<u>Id.</u>  The court reasoned, as does Mr. Velázquez, that by its holding it was "not extending the voluntary departure period, but rather determining on which day the sixtieth day falls."  <u>Id.</u>   But despite this creative reasoning, construing a motion filed after the lapse of the voluntary departure period as "timely" necessarily extends the time an alien has to depart, thus exceeding the scope of relief permitted by statute. <u>Cf.</u> 8 U.S.C. § 1229c.  In other words, according to the Ninth Circuit's construction, the alien has not 60 days to depart, as he would if he had not filed a motion, but 61 (or 62, should the voluntary departure period lapse on a Saturday which happens to

precede a federal holiday) if he elects to file a motion but waits until the last moment to do so.

To construe "day" in the Ninth Circuit's and Mr. Velázquez's preferred manner would require the statute to specify that although "permission to depart voluntarily . . . shall not be valid for a period exceeding 60 days," 8 U.S.C. § 1229c(b)(2), such permission may exceed 60 days when the removable alien (a) elects to file a motion to reopen and (b) the 60th day would fall on a Saturday, Sunday, or federal holiday. We cannot reconfigure the statute in this manner. See Dada, 554 U.S. at 5 (rejecting the proposition that voluntary departure should be tolled pending resolution of a motion to reopen when that interpretation "would reconfigure the voluntary departure scheme in a manner inconsistent with the statutory design.").

We acknowledge that though voluntary departure shields an individual from the harsh consequences of a removal order, accepting relief in this form requires careful consideration, given the significant consequences for failure to timely depart. If he stays longer in hopes the motion will be successful, he is subject to removal for overstaying the voluntary departure period — and becomes ineligible for the very form of relief sought — if it is not. In either scenario, the alien faces significant legal consequences. However, although the statutory scheme forces an alien to weigh two less-than-desirable courses of action, it cannot be said that once one route is selected, the consequences for failure to follow through are unreasonable. While perhaps harsh, they are compelled by statute. See 8 U.S.C. § 1229c(d)(1).

REVIEW DENIED.